MURNAGHAN,. Circuit Judge,
dissenting:
I respectfully dissent in part. I disagree with Part II of the majority’s opinion, which affirms the district court’s grant of summary judgment to all of the Appellees on Counts 1 and 2, the Rule 10b-5 and § 12(2) claims, on the ground that the Appellees made no material misrepresentations or omissions in the Offering Statement for the Equipment Bonds. The majority’s opinion relies on the “bespeaks .caution” doctrine and holds that cautionary language in the Offering Statement renders immaterial the Appellees’ representation that the technology was proven. The majority opinion, however, erroneously applies the bespeaks caution doctrine.
I.
Rule 10b-5, promulgated under the Securities Exchange Act of 1934, and § 12(2) of the Securities Act of 1933 both require the plaintiff to prove that the defendant made an untrué statement of material fact or omitted a material fact necessary to- make the statements true. 17 C.F.R. § 240.10b-5(b) (1996); 15 U.S.C.A. § 77i(2) (West 1981). “Materiality” for purposes of the securities laws is a “fact-specific inquiry” that “depends on the significance the reasonable investor would place on the withheld or misrepresented information.” Basic Inc. ¶. Levinson, 485 U.S. 224, 240, 108 S.Ct. 978, 988, 99 L.Ed.2d 194 (1988). The plaintiff must demonstrate that a “substantial likelihood” exists that disclosure of the true facts “would have been viewed by the reasonable investor as having significantly altered the ‘total mix’ of information made available.” TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). *363 Statements of fact and statements of opinion can both be material. However, “[m]isstatements or omissions regarding actual past or present facts are far more likely to be actionable than statements regarding projections of future performance.” Malone v. Microdyne Corp., 26 F.3d 471, 479 (4th Cir.1994).
In the instant case, the Feasibility Statement attached to the Offering Statement represented that the technology employed in the Facility was “proven” and was being used in “existing operational facilities.” The Appellants contend, however, and provide supporting evidence to prove, that the technology was, in fact, experimental and unproven.
In support of their motions for summary judgment, the Appellees submitted an expert’s affidavit which stated that, in the expert’s opinion, the technology was proven. Specifically, the affidavit stated that “anaerobic composting was not, as of 1993, an ‘experimental’ technology as that term is used and understood in the industry.”
In opposition to the Appellees’ motions, however, the Appellants submitted a report, prepared by the County’s expert, entitled “Organic Waste Systems” (the “OWS Report”). The OWS Report contradicts key representations of the Offering Statement regarding the Facility’s “anaerobic digester eo-composting” equipment. In particular, the OWS Report states that “[njone of the existing technologies [as of 1993] were actually proven over a long period of time and no long-term reliable investment or operating costs were available.” In addition, the OWS Report states that the “technology of dry anaerobic digestion was an emerging technology at the time of selection” and that the development in the United States had been “limited to some small pilot-scale experiences.”
The majority correctly points out that the OWS Report also contains passages that support the Appellees’ argument that the technology in question was proven. However, we have held that on summary judgment the nonmoving party is entitled:
to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered.
Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979). In the instant case, the Appellants at least raised a genuine issue of fact as to whether the statements that they relied upon misrepresented the nature of the technology in the proposed investment.
The Appellants also adequately established that a reasonable investor likely would have considered this information “material.” Experimental technology generally has a greater risk of failure than proven technology. More importantly, the success of the technology in the instant case bore directly on the risk of the investment. The sole source of revenues for repayment of the Equipment Bonds was the payments that VBFC would receive from the County under the Operations Contract. VBFC had no other significant sources of revenue or assets. However, the County would only pay VBFC under the Operations Contract if the VBFC successfully processed the trash in the Facility. Thus, if the technology failed, so would the revenues for repayment of the Equipment Bonds. A substantial likelihood exists that a prospective investor would have viewed the “total mix” of information to have been significantly altered if the investor knew that the technology was experimental and had not been proven. TSC Industries, Inc., 426 U.S. at 449, 96 S.Ct. at 2132.
Contrary to the majority’s reasoning in Part II of its opinion, the “cautionary statements” in the Offering Statement do not render the Appellees’ misrepresentations immaterial. The bespeaks caution doctrine provides that certain misrepresentations in offering documents do not establish securities fraud liability when they are accompanied by meaningful warnings that clearly “bespeak caution.” In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 364 (3d Cir.1993), cert. denied sub nom. Gollomp v. Trump, 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). As the Third Circuit stated, “ ‘bespeaks caution’ is essentially *364 shorthand for the well-established principle that a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law.” Id. Courts apply the narrow, fact-intensive bespeaks caution defense on a case-by-case basis. See, e.g., Harden v. Raffensperger, Hughes & Co., 65 F.3d 1392, 1404 (7th Cir.1995); Rubinstein v. Collins, 20 F.3d 160, 167-68 (5th Cir.1994); Trump, 7 F.3d at 371.
However, the bespeaks caution doctrine only applies to alleged misrepresentations regarding “soft,” forward-looking statements, such as forecasts, opinions, and projections. For example, in Trump, 7 F.3d at 369-71, the Third Circuit held that an allegedly false statement that the issuer “believed” that it would generate sufficient funds in the future to repay the principal and interest on the bonds at issue was not actionable in view of disclosures “bespeaking” caution about the prediction. The Trump court held that forward-looking statements will not form the basis for a securities fraud claim if those statements are accompanied by meaningful cautionary statements. Id. at 371. The Fifth Circuit similarly has held that the bespeaks caution doctrine addresses “situations in which optimistic projections are coupled with cautionary language.” See Rubinstein, 20 F.3d at 167 (emphasis added). See also Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1040 (6th Cir.1991) (“Economic projections are not actionable if they bespeak caution.”); In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir.1994) (holding that the bespeaks caution doctrine applies when the defendants’ forward-looking representations contain sufficient cautionary language), cert, denied sub nom. Miller v. Pezzani, — U.S. -, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995),
The bespeaks caution doctrine does not apply to misrepresentations regarding known, historical facts. The Fifth Circuit, for example, stated that “the inclusion of general cautionary language regarding a prediction would not excuse the alleged failure to reveal known material, adverse facts.” Rubinstein, 20 F.3d at 171. The Seventh Circuit also has held that the bespeaks caution doctrine does not, as a matter of law, render misrepresentations of “hard” fact immaterial. See Harden, 65 F.3d at 1405-06. The First Circuit similarly has explained that the bespeaks caution doctrine cannot render a false statement of present fact immaterial as a matter of law. See Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1213 (1st Cir.1996).
A district court similarly held that the bespeaks caution doctrine does not justify dismissal of a complaint where a plaintiff contends that the defendants concealed or misrepresented current events and business conditions. See J/H Real Estate, Inc. v. Abramson, 901 F.Supp. 952, 956 (E.D.Pa.1995). That court held that the “doctrine applies only where forecasts or projections are accompanied by sufficient cautionary language. In other words, the misleading statements must be ‘forward-looking’ before the ‘bespeaks caution’ doctrine can be invoked.” Id. (internal citations omitted).
The bespeaks caution doctrine should not apply to the alleged misrepresentations in the instant ease. The Appellants premise liability on the Appellees’ misrepresentation of current and existing facts regarding the experimental nature of the technology. The Feasibility Study represented that the technology employed in the Facility was “proven” and used in “existing operational facilities,” and the Appellants have raised at least a genuine issue of fact that the technology was not proven and had only been used in small, phot-scale facilities. Unlike the cases that the district court and the majority opinion cite, the instant case does not involve predictions about future events. Rather, it involves misrepresentations about known, historical facts. “Proven” describes an established fact, not a forward-looking projection. Thus, since the Appellants sufficiently proved, for purposes of summary judgment, that the Appellees misrepresented and hid present facts that would have allowed the Appellants to make an informed judgment as to the extent of the risk, the surrounding cautionary language could not have rendered the statements immaterial as a matter of law. The inclusion of such cautionary language regarding predictions of the Facility’s *365 future success does not excuse the Appellees’ alleged misrepresentation of current and existing facts regarding the nature of the technology.
Therefore, I think that the district court erred in granting summary judgment to all of the Appellees on Counts 1 and 2, the Rule 10b-5 and § 12(2) claims, on the ground that the Appellees did not make a material misrepresentation or omission.
II.
I do, however, agree with Part III of the majority’s opinion, which affirms the district court’s grant of summary judgment to all of the Appellees on the Rule 10b-5 claim on the additional ground that the Appellants failed to demonstrate loss causation. Thus, I would also affirm the district court’s grant of summary judgment to all of the Appellees on Count 1, the Rule 10b-5 claim, but I would do so only on the ground that the Appellants failed to establish loss causation.
III.
As the majority opinion notes, however, loss causation was not an element of a claim under § 12(2) at the time that the Appellants commenced the instant suit. Since then, Congress has amended § 12(2) to require proof of loss causation. See 15 U.S.C.A. § 77/(b) (West Supp.1996). However, the amendment does not apply to suits, such as the instant one, commenced before December 22,1995. Therefore, the Appellants’ failure to demonstrate loss causation is not fatal to their § 12(2) claim.
The district court properly granted summary judgment to the County and the Board on the § 12(2) claim on the ground that they are not statutory sellers of securities under § 12(2). Section 12(2) imposes liability on “[a]ny person” who “offers or sells a security” by means of a prospectus that includes a material misrepresentation or omission. 15 U.S.C.A. § 77/(2) (West 1981). Thus, § 12(2) limits liability to those who “offer or sell” securities.
In Pinter v. Dahl, 486 U.S. 622, 641-47, 108 S.Ct. 2063, 2075-79, 100 L.Ed.2d 658 (1988), the Supreme Court addressed the scope of “offer or sell.”* The Supreme Court held that an individual who passes title in a security to a buyer for value and an individual who engages in solicitation both qualify as one who “offers or sells.” Id. The district court in the instant case correctly found that the County and the Board did not “offer or sell” the Equipment Bonds because they neither solicited nor passed title to the Appellants. The Appellants failed to establish any contact between themselves and the County or the Board prior to the sale. Thus, I would affirm the district court’s grant of summary judgment to the County and the Board on the § 12(2) claim.
However, as stated above, I think that the district court erred in granting summary judgment to the remaining Appellees on the § 12(2) claim on the ground that the Appellees did not make a material misrepresentation. Since the bespeaks caution doctrine does not properly apply to the instant case, I would reverse the district court’s grant of summary judgment to the remaining Appellees on Count 2, the § 12(2) claim. Since I would reverse the district court’s dismissal of the federal § 12(2) claim, I would also reverse the district court’s dismissal of the pendent state law claims asserted in Counts 4 through 16 of the amended complaint.

 The Supreme Court actually decided Pinter under § 12(1) of the Securities Act of 1933, which also limits liability to those who "offer or sell” securities. See 15 U.S.C.A. § 77l(1) (West 1981). Pinter's reasoning, however, applies with equal force to cases under § 12(2). See Cortee Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 49 (2d Cir.1991); In re RAC Mortgage Inv. Corp. Sec. Litig., 765 F.Supp. 860, 865 (D.Md.1991).